OPINION
Defendant, Donald Whitmore, appeals from his conviction and sentence for aggravated robbery.
On August 19, 2000, shortly before 8:00 p.m., two men entered the One Stop Drive Thru on Market Street in Troy, Ohio. The two men made a purchase and left. A few minutes later the two men returned. They waited there until all of the customers had left before entering via a back door. Both men wore socks on their hands.
Two employees were working at the store, Brian Heffelfinger and Erin O'Neal. One of the robbers, later identified as Defendant, held a tire iron as he approached O'Neal. The other robber, later identified as Gerald Kelly, kept his hands inside his pocket as though he had a gun, as he approached Heffelfinger. The two robbers demanded money, and after Kelly grabbed all of the money out of the cash register and put it in his pocket, he and Defendant locked O'Neal and Heffelfinger inside one of the coolers.
As Kelly and Defendant were preparing to leave, another employee of the drive thru, Deanna Mott, entered the drive thru on foot and came face to face with Kelly and Defendant. Mott noticed that Kelly had a lot of cash sticking out of his pocket and that Defendant was carrying a tire iron. Mott immediately became concerned for the safety of her fellow employees, and after Kelly and Defendant fled out the back door she located O'Neal and Heffelfinger and released them from the cooler. Mott then ran out the back door to see if she could locate the perpetrators, while O'Neal ran for help. Mott observed a maroon colored vehicle with a white stripe on the hood that was parked by the fire station. That vehicle drove off in a hurry.
The security cameras at the One Stop Drive Thru captured the beginning of this robbery on videotape. When police showed that videotape to area law enforcement agencies and on the local television news, several tips were received as to the identity of one of the robbers. This information eventually led to the arrest and indictment of Gerald Kelly. When police interviewed Kelly on February 5, 2001, he identified Defendant Whitmore as the other participant in this robbery. Kelly subsequently agreed to testify against Defendant in exchange for a reduced sentence in his own case., Defendant was subsequently indicted on one count of aggravated robbery. R.C. 2911.01(A)(1). Following a jury trial, Defendant was found guilty as charged. Defendant filed a motion for a new trial alleging that the State had failed to disclose exculpatory evidence; that O'Neal had failed to identify a photograph of Defendant in a photospread, and also misidentified some unknown third person as one of the perpetrators in another photospread. The trial court overruled Defendant's motion for a new trial and sentenced him to six years imprisonment.
From his conviction and sentence Defendant has timely appealed to this court.
 FIRST ASSIGNMENT OF ERROR THE VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE APPELLANT'S RIGHT TO DUE PROCESS.
Defendant was found guilty by a jury of violating R.C. 2911.01(A)(1), which provides:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.
A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259 :
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Defendant argues that the evidence presented by the State was insufficient to prove that he was one of the perpetrators of this robbery. In that regard, Defendant points out that none of the eyewitnesses who were present during this robbery were able to identify him from the videotape of the incident or from the photospreads shown by the police. Defendant also argues that the testimony of Gerald Kelly, who admitted his participation in this robbery and named Defendant as the other participant, is not worthy of belief because Kelly testified against Defendant in order to receive a reduced sentence in his own case.
Although the portion of this robbery recorded on videotape is very brief, it does show two African-American males entering the One Stop Drive Thru via the back door. After that videotape was shown on the local news, police received several tips that identified Gerald Kelly as one of the two men depicted in the videotape. That information eventually led to the identification of Defendant as the other robber., Defendant is correct in observing that none of the State's eyewitnesses to this robbery, Brian Heffelfinger, Erin O'Neal and Deanna Mott, made a pretrial identification of him, or of Gerald Kelly for that matter. However, Deanna Mott made a positive in-court identification of Defendant at trial as one of the two robbers. Furthermore, Gerald Kelly testified at trial, admitted his involvement in this robbery, and named Defendant as the other participant. The jury was informed that Kelly had already pled guilty to aggravated robbery as a result of his involvement, and had agreed to testify against Defendant in exchange for a five year sentence in his own case. The credibility of the witnesses who testified at trial and the weight to be given to their testimony were matters for the jury as trier of facts to resolve. State v. DeHass (1976), 10 Ohio St.2d 230.
The evidence presented at trial, when viewed in a light most favorable to the State, as Jenks requires, is evidence from which a rational trier of fact could conclude beyond a reasonable doubt that Defendant was one of the perpetrators of this robbery. Defendant's conviction is supported by legally sufficient evidence.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY DENYING THE APPELLANT HIS RIGHT TO DUE PROCESS.
A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (October 2, 1997), Champaign App. No. 97-CA-03, unreported., Defendant argues that his conviction for aggravated robbery is against the manifest weight of the evidence because (1) there is no physical evidence linking him to this crime, (2) the testimony of Deanna Mott identifying Defendant at trial as one of the robbers is not worthy of belief because she was unable to make a pretrial identification of the other robber, Gerald Kelly, from photographs, and (3) the testimony of Gerald Kelly, identifying Defendant as his accomplice, is not worthy of belief because Kelly's testimony was given in anticipation of receiving a benefit in his own case as a reward for testifying.
Essentially, Defendant attacks the credibility of Deanna Mott and Gerald Kelly, the two witnesses who identified him as one of the perpetrators of this robbery. By returning a guilty verdict, it is apparent that the jury chose to believe those witnesses. As we previously observed, it was within the province of the jury as the trier of facts to determine the credibility of the witnesses who testified. DeHass, supra.
Although it is true that Mott was unable to make a pretrial identification of Gerald Kelly from photographs, she was never shown a photospread containing a picture of Defendant. In identifying Defendant at trial, Mott testified that she came face-to-face with the two robbers inside the One Stop Drive Thru, and she got a good look at them.
In assessing the credibility of Gerald Kelly's testimony, the jury was made aware of Kelly's possible motive for testifying; that in exchange for his testimony against Defendant, Kelly would receive a lighter sentence in his own case, five years imprisonment.
In reviewing the entire record in this case as a whole, we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred., Defendant's conviction is not against the manifest weight of the evidence., Defendant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT'S MOTION FOR A NEW TRIAL ON THE BASIS THAT THE STATE FAILED TO PROVIDE EXCULPATORY EVIDENCE TO THE APPELLANT.
Erin O'Neal, one of the two employees of the drive-thru whom the two robbers locked in a cooler, testified at trial. She was able to identify Gerald Kelly, but not Defendant Whitmore.
Det. Cruea, who showed photospreads to O'Neal after the robbery, testified for the State. During his cross-examination by Defendant itnwas brought out that Det. Cruea had shown Erin O'Neal photospreads on two occasions. In one instance, on September 5, 2000, she identified some person other than either Defendant or Kelly as one of the perpetrators. On another occasion, March 23, 2001, O'Neal was shown a photospread containing Defendant's picture and failed to identify him as a perpetrator. Det. Cruea testified that he prepared no report of those matters, though the photospreads he used were contained in his file, which Defendant's attorney was shown in response to his request for discovery. As a result, O'Neal's failure to identify the Defendant on one occasion and her misidentification of another person on the other was not made known to Defendant by the State., Defendant moved for a mistrial at the close of the State's case, arguing that O'Neal's failure to identify him from one photospread and her misidentification of another person in the second photospread was exculpatory evidence which the State had an obligation to report to him under the rule of Brady v. Maryland (1963),373 U.S. 83, 83 S.Ct. 1194, 110 L.Ed.2d 215. The State replied that it satisfied its Brady obligation when Defendant's attorney was shown Det. Cruea's file containing the photospreads. The State argued that defense counsel's failure to recognize the exculpatory character of the evidence he was shown is chargeable to Defendant.
The trial court denied Defendant's motion for a mistrial, and his subsequent motion for a new trial made on the same grounds. The trial court found that Defendant was not prejudiced by the State's failure to reveal the facts concerned prior to O'Neal's testimony because the jury was made aware of them through Det. Cruea's testimony on cross-examination.
In State v. Aldridge (1997), 120 Ohio App.3d 122, 137, we observed:
 In Brady v. Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215, 218, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
 This rule also applies to impeachment evidence. United States v. Bagley (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481. Evidence is material under Brady "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Johnston (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome."
Id.
The State's obligation under Brady and Crim.R. 16(B)(1)(f) is to affirmatively disclose exculpatory evidence; that is, evidence that the defendant might introduce at trial to exculpate himself. The practice followed by the State in this case of simply allowing defense counsel to review the police files which contained the actual photospreads shown to O'Neal by Det. Cruea, without any corresponding information indicating that when O'Neal viewed the September 5, 2000 photospread she identified some unknown third person as one of the robbers, and upon viewing the March 23, 2001, photospread O'Neal failed to identify a picture of Defendant, does not satisfy the State's burden to affirmatively disclose exculpatory evidence.
As the legal representative of the State of Ohio, the prosecuting attorney cannot delegate or transfer his obligations under Brady and Crim.R. 16(B)(1)(f) to police investigators. Det. Cruea was not under any legal duty to make a written record of the exculpatory evidence generated by O'Neal's responses to the photospreads. However, neither can the State rely upon police reports which fail to contain exculpatory evidence and fulfill its duty to affirmatively disclose Brady material. Indeed, the preferred practice is for the State to present a written submission to defense counsel and the court relating any exculpatory evidence known to the State of its agents, including police officers.
Though the exculpatory evidence at issue here was not affirmatively disclosed by the State to the defense prior to trial, as Brady requires, that exculpatory evidence was discovered by Defendant during the trial and presented to the trier of facts, the jury, for its consideration and weighing in reaching a verdict. Furthermore, defense counsel had the opportunity to argue that O'Neal's misidentification of a third person as one of the robbers and her failure to identify a photograph of Defendant raises reasonable doubt about whether Defendant was the other perpetrator, along with Kelly. He did so during his closing argument. (T. 273-280). He was not impaired in his presentation of that evidence merely because it was not brought out during the testimony of Erin O'Neal, who failed to identify Defendant at trial.
Under these circumstances, there is no basis to find a Brady violation because no reasonable probability exists of a different outcome in the trial had the exculpatory evidence been disclosed prior to trial. The trier of facts was able to review that material before reaching its verdict. State v. Wickline (1990), 50 Ohio St.3d 114; State v. Aldridge, supra, at 145-146.
The third assignment of error is overruled. The judgment of the trial court will be affirmed.
POWELL, J., concurs. FAIN, J., concurs in the judgment.
Hon. Stephen W. Powell, Court of Appeals, Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.